Daniel Cooper (Bar No. 153576)
Layne Friedrich (Bar No. 195431)
Drevet Hunt (Bar No. 240487)
LAWYERS FOR CLEAN WATER, INC.
1004-A O'Reilly Avenue
San Francisco, California 94129
Telephone: (415) 440-6520
Facsimile: (415) 440-4155
Email: layne@lawyersforcleanwater.com

Brian Gaffney (Bar No. 168778)
LAW OFFICES OF BRIAN GAFFNEY
605 Market Street, Suite 505
San Francisco, California 94105
Telephone: (415) 442-0711
Facsimile: (415) 442-0713
Email: brian@gaffneylegal.com

Amy Chastain (Bar No. 235745)
SAN FRANCISCO BAYKEEPER
785 Market Street, Suite 850
San Francisco, CA 94103
Telephone: (415) 856-0444 x 106
Facsimile: (415) 856-0443
Email: amy@baykeeper.org

Attorneys for Plaintiff
SAN FRANCISCO BAYKEEPER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN FRANCISCO BAYKEEPER, a non-profit corporation,<br><br>       Plaintiff,<br><br>    v.<br><br>COUNTY OF SAN MATEO, and BURLINGAME HILLS SEWER MAINTENANCE DISTRICT;<br><br>       Defendants. | Civil Case No.:  CV 08-03951 BZ<br><br>**[PROPOSED] CONSENT DECREE**<br><br>Honorable Bernard Zimmerman |

**CONSENT DECREE**

The following Consent Decree is entered into by and between Plaintiff San Francisco Baykeeper ("Plaintiff" or "Baykeeper"), and defendants County of San Mateo ("County") and Burlingame Hills Sewer Maintenance District ("BHSMD") (collectively "Defendants"). The entities entering into this Consent Decree are each referred to herein as "Settling Party" and collectively as "Settling Parties."

**WHEREAS**, Baykeeper is a non-profit public benefit corporation dedicated to, among other things, the protection and enhancement of the water quality of the San Francisco Bay-Delta Estuary;

**WHEREAS**, the County is a political subdivision of the State of California and is a permittee under the National Pollutant Discharge Elimination System ("NPDES") permit No. CAS0029921, Order No. 99-059 municipal separate storm system ("MS4") permit (hereinafter "MS4 Permit");

**WHEREAS,** the BHSMD is a special district as defined by California Government Code section 16271(d) that owns and operates the Burlingame Hills sewage collection system, which is a satellite system where wastewater is conveyed through sewer mains to a wastewater treatment plant operated by the city of Burlingame;

**WHEREAS**, on June 5, 2008, Baykeeper provided the Defendants, the Administrator and the Regional Administrator for Region IX of the United States Environmental Protection Agency ("EPA"), and the Executive Director of the California State Water Resources Control Board ("State Board") with a Notice of Violation and Intent to File Suit under § 505(a) of the Federal Water Pollution Control Act ("Clean Water Act" or "CWA"), 33 U.S.C. § 1365(a)(l) and (2). The 60-Day Notice alleged that Defendants violated and continue to violate the Clean Water Act for discharges of pollutants without an NPDES permit, and that the County violated and continues to violate the CWA by discharging in violation of the MS4 Permit;

**WHEREAS**, on August 19, 2008, Plaintiff filed its complaint in the United States District Court for the Northern District of California ("District Court") against Defendants, Case No. CV-08-3951 BZ (hereinafter "Complaint");

**WHEREAS**, Defendants deny Baykeeper's allegations that it has violated the Clean Water Act and/or any of the permits as alleged in the Complaint and denies it has liability to Baykeeper or

1   other citizen groups.

2          **WHEREAS,** the Parties agree that nothing in the Consent Decree shall be construed as an

3   admission by Defendants, and does not intend to imply, any admission as to any fact, finding, issue of

4   law, or violation of law, nor shall compliance with this Consent Decree be construed as an admission

5   by Defendants of any fact, finding, conclusion, issue of law or violation of law;

6          **WHEREAS**, the Parties, through their authorized representatives and without either

7   adjudication of the Complaint's claims or admission by Defendants of any alleged violation or other

8   wrongdoing, have chosen to resolve this action through settlement and avoid the costs and

9   uncertainties of further litigation;

10          **NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of

11   which is hereby acknowledged, the Parties each hereby agree as follows:

12                        **I.      GENERAL OBJECTIVES**

13          1.      The objectives of this Consent Decree are:

14          a.      To ensure that Defendants use, implement, and improve ways, means, and methods to

15   prevent sanitary sewer overflows;

16          b.      To ensure that the County continues to use, implement, and improve ways, means, and

17   methods to prevent violations of the MS4 Permit; and

18          c.      To further the goals and objectives of the CWA.

19                        **II.     DEFINITIONS**

20          2.      Unless otherwise expressly defined herein, terms used in this Consent Decree, which

21   are defined in the CWA or in regulations, or rules promulgated under the CWA, have the meaning

22   assigned to them in the applicable statutes, regulations, or rules.  Whenever terms listed below are

23   used in this Consent Decree, the following definitions apply:

24          a.      "BHSMD sewer system" means the sewer pipes and lines, manholes or maintenance

25   holes, and all appurtenances thereto under ownership of the BHSMD that are used to convey

26   wastewater to the Burlingame Waste Water Treatment Plant ("Burlingame WWTP").

27          b.      "Burlingame WWTP" means the treatment facility and all equipment, storage, and

28   other infrastructure used by the City of Burlingame to treat sanitary sewage located downstream of

---

1     the headworks to such facility until the point at which it is discharged into the North Bayside System.

2          c.        "CCTV" means closed-circuit television.

3          d.        "CIP" means BHSMD sewer system capital improvement program.

4          e.        "District" or BHSMD means the Burlingame Hills Sewer Maintenance District.

5          f.        "Day" means a calendar day.  In computing any period of time under this Consent

6 Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the

7 period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or

8 State Holiday.

9          g.        "Design Storm" means a 10-year return period rainstorm with a duration of 24 hours

10 as measured by a properly calibrated and monitored rain gage, or such rain gages, within BHSMD or,

11 if no such gage is available, at the San Francisco International Airport.  The engineering design

12 criteria to be used by BHSMD for a 10-year 24-hour storm shall take into account short duration

13 intense rainfall periods by reference to USDA Urban Hydrology for Small Watersheds guidance TR-

14 55 (June 1986) and use of the synthetic rainfall distribution curve (Figure B-1 SCS 24-Hour Rainfall

15 Distribution) found in Appendix B of TR-55. BHSMD shall use the distribution curve for a Type IA

16 storm as referenced on Figure B-1 of Appendix B of TR-55 based on local rainfall quantities for the

17 BHSMD area in San Mateo County, California.

18          h.        "FOG" means fats, oil, and grease.

19          i.        "I/I" means Infiltration and Inflow.

20          j.        "Infiltration" means groundwater, rainwater, or other surface water that may enter the

21 BHSMD sewer system through the pipe, joints, or cracks.

22          k.        "Inflow" means wastewater or water that may enter the BHSMD sewer system

23 through unpermitted connections, drains, or manholes.

24          l.        "Lower Lateral" means the private lateral line connecting a home or other structure to

25 the BHSMD's sewer main extending from the sewer main to the back of the public right-of-way or

26 property line clean out, whichever is applicable to the lateral connection.  Lower Laterals are

27 generally connected to Upper Laterals.

28          m.        "Lower Lateral Spill" or "Lower Lateral SSO" means an unintentional discharge,

1  release, or spill of sewage from a Lower Lateral within the BHSMD.  Wastewater backups into

2  buildings and on private property that are caused by blockages or flow conditions in a Lower Lateral

3  are included in this definition of Lower Lateral Spill or Lower Lateral SSO.

4        n.     "MS4" means the County's municipal separate storm sewer system.

5        o.     "MS4 Permit" means NPDES permit No. CA0029912, Order No. 99-059.

6        p.     "Nearshore Outfall" means the outfall across the street from the Burlingame WWTP

7  through which the City of Burlingame has the physical ability to discharge effluent to San Francisco

8  Bay.

9        q.     "NPDES" means National Pollutant Discharge Elimination System.

10        r.     "Sanitary Sewer Overflow," "overflow," or "SSO" has the same meaning as those

11  terms are defined in Section A.1. of the Statewide General Waste Discharge Requirements for

12  Sanitary Sewer Systems, State Water Resources Control Board Order No. 2006-003, or any

13  amendment thereto, and which currently means: "any overflow, spill, release, discharge or diversion

14  of untreated or partially treated wastewater from the BHSMD sewer system.  SSOs include:  (i)

15  Overflows or releases of untreated or partially treated wastewater that reach waters of the United

16  States; (ii) Overflows or releases of untreated or partially treated wastewater that do not reach waters

17  of the United States; and (iii) Wastewater backups into buildings and on private property that are

18  caused by blockages or flow conditions within the publicly owned portion of a sanitary sewer

19  system."  For purposes of this definition, "waters of the United States" has the meaning as set forth in

20  40 C.F.R. § 122.2.

21        s.     "Sewer Line Segment" means any section of publicly owned sewer line or pipe

22  located between: (1) two manholes/maintenance holes; (2) a pump station and a

23  manhole/maintenance hole; (3) a pump station or a manhole/maintenance hole and a headworks

24  structure; or (4) a sewer line or pipe otherwise identifiable as a discrete section.

25        t.     "SSO General WDR" means Statewide General Waste Discharge Requirements for

26  Sanitary Sewer Systems, State Water Resources Control Board Order No. 2006-0003-DWQ.

27        u.     "Upper Lateral" means the private sanitary sewer lateral or line connecting a home or

28  other structure to the Lower Lateral, generally extending from the outside of the foundation of the

1   structure to the property line cleanout.

2   v.   "SSMP" means the Sewer System Management Program implemented by the

3   BHSMD for the BHSMD sewer system to monitor the condition, maintenance, and repair of the

4   collection system.

5   ### III.   JURISDICTION AND VENUE

6   3.   Plaintiff alleges that: a) this District Court has jurisdiction over the subject matter of

7   the claims asserted by Plaintiff pursuant to Clean Water Act Section 505(a), 33 U.S.C. § 1365(a), and

8   28 U.S.C. §§ 1331, 1355, and 1367; b) venue is proper in this judicial district pursuant to Clean

9   Water Act sections 309(b), 505(c), 33 U.S.C. §§ 1319(b), 1365(c), and 28 U.S.C. §§ 1391(b) and (c);

10  and c) the Complaint filed herein states claims for which relief can be granted.  For purposes of

11  settlement, the Parties waive all objections that they may have to the Court's jurisdiction to enter and

12  retain jurisdiction over this Consent Decree.

13  ### IV.   EFFECT OF CONSENT DECREE

14  4.   Plaintiff does not, by its consent to this Consent Decree, warrant or aver in any manner

15  that the Defendants' compliance with this Agreement will constitute or result in compliance with any

16  Federal or State law or regulation.  Nothing in this Agreement shall be construed to affect or limit in

17  any way the obligation of the Defendants to comply with all Federal, State and local laws and

18  regulations governing any activity required by this Consent Decree.

19  ### V.   APPLICABILITY

20  5.   The provisions of this Consent Decree apply to and bind the Parties, including any

21  successors or assigns.  The Parties certify that their undersigned representatives are fully authorized

22  to enter into this Consent Decree, to execute it on behalf of the Parties, and to legally bind the Parties

23  to its terms.

24  6.   The Parties agree to be bound by this Consent Decree and not to contest its validity in

25  any subsequent proceeding to implement or enforce its terms.  By entering into this Consent Decree,

26  the Defendants do not admit liability for any purpose as to any allegation or matter arising out of the

27  Complaint.

28  7.   No change in ownership or corporate or other legal status of the Defendants or any

1 transfer of the Defendants' assets or liabilities shall in any way alter the responsibilities of the

2 Defendants or any of its successors or assigns thereof, under this Consent Decree.  In any action to

3 enforce this Consent Decree, the Defendants' shall not raise as a defense the failure by any of its

4 agents, servants, contractors, employees, and successors or assigns to take actions necessary to

5 comply with this Consent Decree.

6 **VI.    EFFECTIVE DATE AND TERMINATION DATE**

7       8.       The term "Effective Date," as used in this Consent Decree, shall mean the last date for

8 the United States Department of Justice to comment on the [proposed] Consent Decree, i.e., the 45th

9 day following the United States Department of Justice's receipt of the [proposed] Consent Decree

10 and Stipulated Dismissal.

11       9.       This Consent Decree will terminate six (6) years from the Effective Date

12 ("Termination Date") unless Baykeeper has invoked the dispute resolution procedures set forth in

13 Section XVIII alleging violations of this Consent Decree by the BHSMD and demanding an

14 extension of the date for termination of this Consent Decree.

15 **VII.    SSO AND SPILL REDUCTION PERFORMANCE GOALS**

16       10.      SSO Reduction Goals.  It is the goal of this Consent Decree to reduce BHSMD sewer

17 system SSOs to zero over time.  To approach the goal of zero SSOs, the BHSMD shall reduce its

18 SSOs as follows:

19       a.       BHSMD sewer system SSO Reduction Performance Goals.

20

21

22

| Calendar Year | Maximum Number of SSOs/Year |
|---------------|-----------------------------|
| 2009 | 12 |
| 2010 | 11 |
| 2011 | 8 |
| 2012 | 5 |
| 2013 | 3 |
| 2014 | 1 |

23

24

25

26

27

28       b.       For purposes of determining compliance with the BHSMD sewer system SSO

Reduction Performance Goals, SSOs and Spills caused by storm events exceeding the Design Storm

1  shall not be counted.

2      c.      Failure to meet the SSO Reduction Performance Goals shall be a violation of this

3  Consent Decree and shall be subject to stipulated payments as set forth in Section XIX.

4      d.      In order to reach the above SSO goals, the District shall implement the programs

5  described below.

6  ### VIII.   SSO REPORTING AND RESPONSE

7      11.     The District shall provide a copy of the Annual SSO Summary Reports that it submits

8  to the Regional Board to Baykeeper during the life of the Consent Decree.  Such reports shall meet

9  the Regional Board requirements and shall be due to Baykeeper by March 31st of each calendar year.

10  The District shall also compile and provide to Baykeeper an appendix to the Annual SSO Report that

11  will include the individual reports for each spill provided to the State Board as a part of the first 3

12  annual reports.  As these individual spill reports are to be available for review on the State Board's

13  electronic reporting public access website, the BHSMD may discontinue providing to Baykeeper the

14  appendix of the individual spill reports after the first 3 annual reports, unless Baykeeper makes a

15  request that the BHSMD continue to provide such appendices.

16      12.     The BHSMD shall provide Baykeeper with a description of the capital improvements

17  completed in the BHSMD sewer system during the prior calendar year, and the total cost associated

18  with each capital expenditure.  Such reports, which shall be in a format reasonably determined by the

19  BHSMD, shall be due to Baykeeper by March 31st of each calendar year.

20  ### IX.      SSO REDUCTION ACTION PLAN

21      13.     If any Annual SSO Summary Report provided by the BHSMD to Baykeeper

22  documents compliance with the then-applicable SSO Reduction Performance Goals, the BHSMD

23  shall have no obligation to prepare a SSO Reduction Action Plan as set forth herein.  However, if an

24  Annual SSO Summary Report documents SSOs in excess of the SSO Reduction Performance Goals

25  of this Consent Decree, the BHSMD shall submit to Baykeeper by June 1st of that same year a SSO

26  Reduction Action Plan that specifies the actions taken in the prior calendar year pursuant to the

27  Consent Decree and additional measures to be taken during the next calendar year and thereafter,

28  which are designed to achieve compliance with the SSO Reduction Performance Goals set forth in

1  this Consent Decree.  The SSO Reduction Action Plan shall include a proposed schedule for

2  implementation of all actions proposed.

3      14.   Baykeeper shall provide the BHSMD, in writing, with all recommended revisions to

4  the SSO Reduction Action Plan within 45 days of receipt of such SSO Reduction Action Plan.  The

5  BHSMD shall consider each of Baykeeper's recommended revisions and indicate within 45 days of

6  receipt whether the BHSMD accepts each such recommendation for revision.  If the BHSMD does

7  not accept each of Baykeeper's recommendations, and remaining differences cannot be informally

8  resolved promptly between the Settling Parties, then Baykeeper may seek Dispute Resolution

9  pursuant to Section XVIII.  In such Dispute Resolution Processes, the BHSMD shall need to

10 demonstrate that the elements or actions set forth in the SSO Reduction Action Plan are designed to

11 achieve compliance with the SSO Performance Goals set forth in Section VII, and, taken as a whole,

12 constitute good engineering and operational approach to achieving compliance.  To the extent the

13 Settling Parties do not dispute original provisions or recommended revisions, the BHSMD shall

14 implement all undisputed provisions or revisions.  After the Settling Parties have reached agreement

15 on the SSO Reduction Action Plan or after Dispute Resolution resolves any dispute concerning the

16 SSO Reduction Action Plan, the BHSMD shall begin implementation of the SSO Reduction Action

17 Plan as an enforceable requirement of this Consent Decree within 45 days of agreement or upon the

18 schedule set forth therein.

19     15.   The BHSMD shall address in the SSO Reduction Action Plan the various elements of

20 such a plan that it believes will be necessary to achieve future compliance with the SSO Reduction

21 Performance Goals.  The BHSMD may include any or all elements in the SSO Reduction Action Plan

22 in its SSMP Program.

23     16.   If additional funding is necessary to implement the SSO Reduction Action Plan the

24 BHSMD shall seek such funding as soon as is practical.  If the BHSMD seeks financing, but is

25 unsuccessful, it will disclose in the SSO Reduction Action Plan the extent of its efforts, including any

26 circumstances beyond its control which could not have been reasonably foreseen or prevented by the

27 exercise of due diligence.

28

# X.   SATELLITE SYSTEMS

17.   The Town of Hillsborough operates a separate sanitary sewage collection system that collects sewage from approximately 1,610 connections in San Mateo County.  The Town of Hillsborough includes approximately 93.7 miles of sewage pipelines and related facilities, some of which are connected to the BHSMD sewer system and ultimately to Burlingame WWTP.

18.   Baykeeper served the Town of Hillsborough with a 60-Day Notice on June 5, 2008. The 60-Day Notice, in part, alleges collection system deficiencies and Clean Water Act violations relating to system capacity issues, I/I and peak wet weather flows.  The volume of flow from this satellite agency constitutes a contribution to the wet weather flows of the BHSMD sewer system and a contribution to capacity-related issues within the BHSMD sewer system.

19.   The City of Burlingame entered a Consent Decree with Baykeeper on October 6, 2008.  The Consent Decree, in part, identifies deficiencies which result in Clean Water Act violations relating to system capacity issues, I/I and peak wet weather flow issues for the City of Burlingame Collection System and the Burlingame WWTP.  The Consent Decree further identifies the interconnection between the City of Burlingame Collection System and the BHSMD sewer system and the impact the BHSMD sewer system has on the Burlingame Collection System and Burlingame WWTP and the Nearshore Outfall.

20.   The BHSMD shall engage both the Town of Hillsborough and the City of Burlingame in substantive discussions to attempt to obtain voluntary cooperation for coordination between the agencies to reach sound engineering decisions on the most cost-effective means for ensuring adequate capacity throughout the collection systems of Burlingame, the BHSMD, and the Town of Hillsborough.  These coordination efforts shall further address the impact on Burlingame's WWTP and use of the Near Shore Outfall related to unabated wet weather flows from the satellite agencies. These coordination efforts shall include:

a.   coordination between the agencies on completing the condition and capacity assessments in order to evaluate the entire integrated collection system including contributions to peak wet weather flows;

b.   coordination between the agencies on reaching sound engineering decisions on the

1   most cost-effective means for ensuring adequate capacity throughout the three collection systems and

2   at the Burlingame WWTP;

3         c.      collaboration among the agencies to ensure the most cost-effective and efficient

4   delivery of the capital improvements needed; and

5         d.      collaboration between the agencies to develop new inter-agency agreements to address

6   these issues, develop financial plans and secure funding needed to complete an integrated capacity

7   assurance program.

8         e.      the submittal of all documents and reports required by Sections XI and XII of this

9   Consent Decree to the City of Burlingame and the Town of Hillsborough.

10         21.      The BHSMD shall update Baykeeper on its coordination efforts on an annual basis,

11   with updates due on March 31st each year for the life of this Consent Decree.  The BHSMD shall

12   respond timely to inquiries submitted by Baykeeper regarding these coordination efforts.

### XI.   CAPACITY ASSURANCE

14         22.      Within four (4) months of the Effective Date of the Consent Decree, the BHSMD shall

15   submit to Baykeeper a work plan for hydraulic modeling of the two trunk sewer lines in the BHSMD

16   sewer system (easement line behind Adeline Drive and Canyon Road).  The hydraulic modeling shall

17   be sufficient to identify all necessary capacity improvements to convey peak wet weather flows to the

18   City of Burlingame Collection System without SSOs caused by insufficient capacity and to decrease

19   the peak wet weather flow conveyed through the BHSMD's system to the Burlingame WWTP to the

20   maximum extent practicable in less than the Design Storm.

21         23.      The work plan shall include all rainfall and flow monitoring necessary to calibrate and

22   validate the model.  The work plan shall also include all smoke testing, dye testing, manhole

23   inspections and other measures necessary to identify sources of I/I along the identified trunk lines and

24   tributary to the identified trunk lines.

25         24.      The installation of flow meters for the I/I study must be completed prior the start of

26   the first rainy season (i.e. September) following the Effective Date of the Consent Decree.  The City

27   of Burlingame and the BHSMD had flow meters installed in early 2009 that will meter flow to and

28   from the identified trunk lines for the 2009-2010 rainy season.  Additional flow monitoring will be

1    undertaken as necessary to complete the hydraulic modeling.

2        25.    Within 2 years of the Effective Date of the Consent Decree, the BHSMD shall provide

3    a Capacity Assurance Report to Baykeeper identifying all necessary capacity improvements to

4    convey peak wet weather flows as a result of storms less than the Design Storm to the City of

5    Burlingame Collection System without SSOs caused by insufficient capacity within the BHSMD and

6    shall decrease the peak wet weather flow conveyed through the BHSMD's system to the Burlingame

7    WWTP to the maximum extent practicable.  The Capacity Assurance Report shall include a schedule

8    for construction of all necessary capacity improvements identified in the Capacity Assurance Report.

9    The schedule for construction of capacity improvements shall be as expeditious as is practical and the

10   BHSMD's goal shall be to complete construction of such improvements within 3 years and 6 months

11   from the date of the final Capacity Assurance Report.  In no event shall the completion of the

12   construction of the improvements identified in the Capacity Assurance Report extend beyond the

13   Termination Date, subject to the provision in paragraph 27 for modifying the Termination Date.

14       26.    The design for the BHSMD's improvements shall take into account anticipated

15   reductions in storm related flows from the Town of Hillsborough collection system and the City of

16   which both direct a portion of their flows through the Burlingame Hills Collection System.  The

17   design for the BHSMD's capacity improvements shall anticipate reductions based on agreements

18   negotiated between the BHSMD, the City of Burlingame and the Town of Hillsborough, the

19   requirements imposed pursuant to consent decrees entered into by the City of Burlingame with

20   Baykeeper, or other court orders or settlements with other legal entities (including between

21   Baykeeper and the Town of Hillsborough) or the Regional Board.

22       27.    Inflow and Infiltration.  I/I identified within the BHSMD sewer system by the rainfall

23   and flow monitoring and condition assessment programs set forth herein, shall be identified in the

24   Capacity Assurance Report, and shall be addressed within the Capacity Assurance Report.  Major

25   sources of I/I shall be removed as expeditiously as practical.  The Capacity Assurance Report shall

26   include capacity improvements for the BHSMD sewer system designed to eliminate capacity-related

27   SSOs during the rain events of less than the Design Storm.  The result of implementing all projects

28   identified in the Capacity Assurance Report shall be the elimination of capacity related SSOs and the

reduction of wet weather I/I to the greatest extent practicable in rainfall events less than the Design Storm.

28.     Final Compliance Report.  The BHSMD shall provide to Baykeeper a final compliance report for Baykeeper's review and comment.  The final compliance report shall be submitted to Baykeeper a minimum of 1 year prior to the Termination Date and the report shall provide the status of all of the construction and other related activities required in the Capacity Assurance Report.  The report shall provide sufficient information and detail to reasonably demonstrate that the BHSMD has undertaken and will have implemented sufficient activities to ensure completion of all projects identified in the Capacity Assurance Report by the Termination Date.  In the event the BHSMD concludes that it cannot complete all of the actions identified in the Capacity Assurance Report by the Termination Date, the BHSMD shall request from Baykeeper an extension of the Termination Date to a date which would allow sufficient opportunity for the BHSMD to complete the necessary improvements.  Baykeeper shall not unreasonably withhold its approval to extend the Termination Date in order to allow for the completion of the needed improvements, provided the BHSMD makes a reasonable demonstration of prior good faith compliance efforts and a justification for additional time to complete the needed capacity improvements.  This final compliance report and any request for an extension of the Termination Date shall be subject to review, comment, and referral to the Dispute Resolution Procedures as set forth in Section XVIII.

29.     Review of Submittals.  Baykeeper shall have the right to review the work plan for hydraulic modeling and provide comments thereon.  Baykeeper shall have 60 days to review and comment on the work plan for hydraulic modeling, but shall use its best efforts to provide comments promptly upon receipt.  The BHSMD shall consider in good faith Baykeeper's comments and attempt to incorporate them into the work plan for the hydraulic modeling.  The Settling Parties realize that professional judgments may differ and therefore Baykeeper shall not have an absolute right to demand modifications to address each of its concerns in the manner it prefers and the BHSMD understands that it must work in good faith with Baykeeper to develop a hydraulic modeling work plan which is sufficient in approach and scope to ultimately satisfy both Settling Parties.

1    30.    Baykeeper shall have 60 days to review and comment on the Capacity Assurance

2    Report.  Similarly, the BHSMD shall consider in good faith and attempt to address Baykeeper's

3    comments.

4    31.    Neither Settling Party shall invoke Dispute Resolution until both Parties have made

5    good faith efforts to resolve any professional differences with regard to the hydraulic work plan and

6    the Capacity Assurance Report.

7    **XII.    SEWER CONDITION ASSESSMENT/REHABILITATION/REPLACEMENT**

8    32.    Within thirty-six (36) months of the Effective Date of the Consent Decree, the

9    BHSMD shall complete CCTV inspection and condition assessment of all sewer line segments in the

10   BHSMD sewer system, which are older than 10 years.

11   33.    Repairs needed to allow the inspection of gravity lines where passage of the CCTV

12   camera was blocked by the condition of the pipe shall be performed timely to allow completion of the

13   CCTV inspection for blocked sections within thirty-six (36) months of the Effective Date of the

14   Consent Decree.

15   34.    The inspection will be accomplished using CCTV.  The defects will be coded using

16   the Pipeline Assessment and Certification Program ("PACP") standards.  The work products will

17   include an inspection database, prioritized repair projects, and prioritized rehabilitation/ replacement

18   projects.  The annual inspection quantity will include the sum of the lengths of all of the gravity

19   sewers where inspection was completed.  The inspection work will be completed using the BHSMD's

20   CCTV crew and/or contract CCTV service.

21   35.    The BHSMD is committed to correcting defects that may cause an SSO within an

22   appropriate timeframe.  The timeframes for actions to correct observed defects are shown on the table

23   below.

24

25

26

27

28

**Timeframe for Actions to Correct Observed Defects**

| Observed Defect | Corrective Action | Time Frame (from date defect observed) |
| --- | --- | --- |
| PACP Grade 4 or 5 Maintenance Defect | Clean sewer | 60 days |
| PACP Grade 3 Maintenance Defect | Clean sewer | 4 months |
| PACP Grade 5 Structural Defect – Immediate Failure Likely | Repair or Rehabilitate Sewer | ASAP |
| PACP Grade 5 Structural Defect – Immediate Failure Unlikely | Repair, Rehabilitate, or Re-inspect Sewer | 2 years |
| PACP Grade 4 Structural Defect | Repair, Rehabilitate, or Re-inspect Sewer | 5 years |

36.     The schedule shall be prioritized to first inspect the easement sewers, sewers in areas with known SSO problems, and sewers with known or suspected structural deficiencies.

## XIII.   IMPLEMENTATION OF FATS, OILS AND GREASE PROGRAM

37.     BHSMD shall enhance the development and implementation of its FOG outreach and public education program.  The Settling Parties believe that the most effective way to minimize FOG related SSOs in residential areas is through customer education to alter their behavior and a Hot Spots Preventive Maintenance Program.  The Hot Spots Program as outlined below shall increase its focus on residential FOG related SSOs in order to minimize residential FOG related SSOs.

## XIV.   SEWER CLEANING, HOT SPOTS, AND LATERAL PROGRAMS

38.     <u>Sewer Cleaning</u>.  Routine Cleaning - BHSMD shall clean all sewers in the BHSMD sewer system at a minimum of once every 2 years.

39.     <u>Hot Spots Program</u>.  BHSMD shall improve its hot spot (preventive maintenance) cleaning program as follows:

a.     The BHSMD shall implement and use the cleaning and evaluation methodology set forth below entitled Preventive Maintenance scheduling/scheduling flow chart.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Preventive Maintenance Scheduling/Scheduling Flow Chart



b.     The BHSMD shall collect observations from its sewer cleaning crews regarding the extent and nature of materials removed during the cleaning process.  The observations shall be recorded in the BHSMD's Computerized Maintenance Management System (CMMS) and the BHSMD shall follow the action portion of the matrix below based on cleaning results indicated:

<u>Standard Sewer Cleaning Results and Action Matrix</u>

|  | **Clear** | **Light** | **Moderate** | **Heavy** |
|---|---|---|---|---|
| **Debris** | Code: **CL**<br>No observable debris | Code: **DL**<br>Minor amount of debris<br>15 minutes or less to clean<br>1 pass | Code: **DM**<br>Less than 5 gallons of debris per line segment<br>15-30 minutes to clean<br>2-3 passes | Code: **DH**<br>More than 5 gallons of debris per line segment<br>More than 30 minutes to clean<br>More than 4 passes<br>Operator concern for future stoppage |

| **Grease** | Code: **CL**<br>No observable grease | Code: **GL**<br>Minor amounts of grease<br>15 minutes or less to clean<br>1 pass | Code; **GM**<br>Small "chunks"<br>No "logs"<br>15-30 minutes to clean<br>2-3 passes | Code: **GH**<br>Big "chunks" or "logs"<br>More than 30 minutes to clean<br>More than 4 passes<br>Operator concern for future stoppage |
|---|---|---|---|---|
| **Roots** | Code: **CL**<br>No observable roots | Code: **RL**<br>Minor amounts of roots<br>15 minutes or less to clean<br>1 pass | Code: **RM**<br>Thin stringy roots<br>No "clumps"<br>15-30 minutes to clean<br>2-3 passes | Code: **RH**<br>Thick roots<br>Large "clumps"<br>More than 30 minutes to clean<br>More than 4 passes<br>Operator concern for future stoppage |
| **Other:**<br>Pipe wall fragments<br>Soil/dirt/ rock | Code: **CL**<br>No observable materials | Code: **OL**<br>Specify material (if possible)<br>Minor amounts of material | Code: **OM**<br>Specify material<br>Less than 5 gallons of material per line segment | Code: **OH**<br>Specify material<br>More than 5 gallons of material per line segment<br>Operator concern for future stoppage |
| **Action** | Decrease frequency to next lower frequency after 3 consecutive CL results (e.g. 6 months to 12 months) | Continue current maintenance frequency | Increase current maintenance frequency to next higher frequency (e.g. 6 months to 3 months) | Increase current maintenance frequency to next higher frequency (e.g. 6 months to 3 months) |

c.      No reduction in cleaning frequency shall be made in a segment with previous history of SSOs without the approval of an appropriate collection system maintenance supervisor. All other changes in cleaning frequency shall be as noted in the table in b. above.

d.      The BHSMD shall institute and maintain a quality assurance/quality control program adequate to ensure proper and complete cleaning of sewers.

e.      If scheduled or hot spot cleaning of a segment or area cannot be properly accomplished due to pipe condition or access limitations, the BHSMD shall move to remedy the condition as soon as practicable.

40.      <u>Lateral Program</u>.

a.      No later than 12 months from the Effective Date of the Consent Decree, appropriate County staff shall present for consideration of the County Board of Supervisors, with a recommendation for adoption, a proposed ordinance that would impose a duty on all property owners to properly maintain privately owned sewer laterals to specified standards. The proposed ordinance

presented for consideration of the Board of Supervisors would, if adopted, require testing of such laterals upon a change in property ownership, significant remodel of structures on the property, or upon request by the BHSMD.  It would further require that all privately owned laterals that fail the inspection be repaired or replaced within ninety days.

b.     No later than 12 months from the Effective Date of the Consent Decree, appropriate County Staff shall present for consideration of the County Board of Supervisors, with a recommendation for adoption, a proposed ordinance that would modify *the San Mateo County Ordinance, 4.24.132 Notification by district to owner*, to include "spills in the Districts sewers caused by a sewer lateral…" so that it shall read "…(d) If the district determines either by repeated calls for emergency maintenance on a sewer lateral, spills from a sewer lateral within a District caused by a sewer lateral defect,…"

c. During the term of this Consent Decree, the County shall retain a streamlined process that ensures private parties will have the necessary access to public right of ways, including obtaining permits to dig up streets and sidewalks, to conduct necessary maintenance, repair, and replacement of Lower Laterals.

## XV.     SPECIAL DISTRICT CONSOLIDATION/DISSOLUTION

41.     No later than 6 months from the effective date, the appropriate County staff shall present for consideration of the County Board of Supervisors, with a recommendation for adoption, a proposal that the County request the San Mateo County Local Agency Formation Commission undertake a municipal service review and sphere of influence study, pursuant to California Government Code sections 56378, 56425, and 56430.  The study shall evaluate, *inter alia*, the benefits and feasibility of consolidation of all special sanitary districts for which the San Mateo County Department of Public Works currently provides sewer collection services."

## XVI.  PAYMENT OF LITIGATION COSTS, SUPPLEMENTAL ENVIRONMENTAL PROJECT, AND MONITORING OF CONSENT DECREE COMPLIANCE

42.     Litigation Costs.  To help compensate Baykeeper for its costs incurred in this action including time spent by legal staff and technical consultants Defendants shall pay Baykeeper Fifty-thousand Dollars ($50,000.00).  Payment shall be due within thirty (30) days from the Effective Date

of this Consent Decree and made payable to "Lawyers for Clean Water Attorney-Client Trust Account" and addressed to: 1004 O'Reilly Avenue, San Francisco, CA 94129, sent overnight delivery

43.    <u>Compliance Monitoring</u>.  Defendants agree to help compensate Plaintiff for time to be spent by legal staff or technical consultants reviewing compliance reports and any other documents, or monitoring Defendants compliance with this Consent Decree.  To this end, the Defendants shall pay One Thousand Five Hundred Dollars ($1,500) annually to Baykeeper each year for the life of this Consent Decree for a cap of Nine Thousand Dollars ($9,000).  Payment shall be made June 1 each year and payable to "Lawyers for Clean Water Attorney Client Trust Account" addressed to 1004 O'Reilly Avenue, San Francisco, CA 94129, sent overnight delivery.

44.    <u>Supplemental Environmental Project</u>.  To remediate perceived environmental past harms resulting from the allegations in the Complaint, Defendants agree to spend Fifteen Thousand Dollars ($15,000) on the following SEPs:

a.    Seven Thousand Five Hundred Dollars ($7,500) to the Rose Foundation for Communities and the Environment ("the Rose Foundation") to be used to fund supplemental environmental projects that will benefit the San Francisco Bay-Delta watershed.  Payment shall be made within thirty (30) days of the Effective Date of this Consent Decree, to:

> The Rose Foundation for Communities and the Environment
> 6008 College Avenue, Suite 10
> Oakland, California 94618
> Attention: Tim Little

b.    Seven Thousand Five Hundred Dollars ($7,500) to be used by the BHSMD to implement a pollution prevention and public awareness program directed at reducing SSOs in the BHSMD caused by FOG, root intrusion, and I&I into privately owned lateral lines.  No later than six months after the Effective Date, the BHSMD shall submit to Baykeeper a plan for implementing the program that will include a budget and a proposed schedule for implementation.  Baykeeper shall have 45 days to recommend revisions to the plan. If the BHSMD does not accept each of Baykeeper's recommendations, and the remaining differences cannot be informally resolved promptly between the Settling Parties, then Baykeeper may seek Dispute Resolution pursuant to Section XVIII.  The program shall by fully implemented no later than two years after the Effective

Date, at which time the BHSMD shall provide Baykeeper with a report summarizing the program and its effectiveness.

## XVII.  COMMITMENTS OF BAYKEEPER

45.      Submission of Consent Decree to Federal Agencies.  Baykeeper shall submit this Consent Decree to EPA and DOJ within 3 days of its execution for agency review consistent with 40 C.F.R. § 135.5.  The agency review period expires 45 days after receipt by both agencies, as evidenced by the certified return receipts, copies of which shall be provided by Baykeeper to Defendants upon request.  In the event that EPA or DOJ comment negatively on the provisions of this Consent Decree, the Settling Parties agree to meet and confer to attempt to resolve the issue(s) raised by EPA or DOJ.

## XVIII. BREACH OF CONSENT DECREE AND DISPUTE RESOLUTION PROCEDURES

46.      Force Majeure.  Defendants shall notify Baykeeper pursuant to the terms of this paragraph, when implementation of the requirements set forth in this Consent Decree, within the deadlines set forth in those paragraphs, becomes impossible, despite the timely good-faith efforts of Defendants, due to circumstances beyond the control of Defendants or its agents, and which could not have been reasonably foreseen and prevented by the exercise of due diligence by Defendants.  Any delays due to Defendants' failure to make timely and bona fide applications and to exercise diligent efforts to obtain permits in normal inclement weather shall not, in any event, be considered to be circumstances beyond Defendants' control.

a.      If Defendants claims impossibility, it shall notify Baykeeper in writing within 21 days of the date that Defendants first knew of the event or circumstance that caused or would cause a violation of this Consent Decree, or the date Defendants should have known of the event or circumstance by the exercise of due diligence.  The notice shall describe the reason for the nonperformance and specifically refer to this Section of this Consent Decree.  It shall describe the anticipated length of time the delay may persist, the cause or causes of the delay, the measures taken or to be taken by Defendants to prevent or minimize the delay, the schedule by which the measures will be implemented, and the anticipated date of compliance. Defendants shall adopt all reasonable measures to avoid and minimize such delays.

b.      The Settling Parties shall meet and confer in good-faith concerning the non-performance and, where the Settling Parties concur that performance was or is impossible, despite the timely good faith efforts of Defendants, due to circumstances beyond the control of Defendants that could not have been reasonably foreseen and prevented by the exercise of due diligence by Defendants, new performance deadlines shall be established.

c.      If Baykeeper disagrees with Defendants' notice, or in the event that the Settling Parties cannot timely agree on the terms of new performance deadlines or requirements, either Settling Party shall have the right to invoke the Dispute Resolution process pursuant to Section XVIII.  In such proceeding, Defendants shall bear the burden of proving that any delay in performance of any requirement of this Consent Decree was caused or will be caused by force majeure and the extent of any delay attributable to such circumstances.

47.      <u>Informal Dispute Resolution</u>.  The Dispute Resolution procedure set forth in paragraphs a and b below and in paragraph 48 shall be the exclusive mechanism for resolving disputes between the Settling Parties with regard to any aspect of this Consent Decree.  The Settling Parties agree to engage in Informal Dispute Resolution pursuant to the terms of this paragraph:

a.      If a dispute under this Consent Decree arises, or any Settling Party believes that a breach of this Consent Decree has occurred, the Settling Parties shall meet and confer (telephonically or in-person) within 15 days of receiving written notification of a request for such meeting.  During the meet and confer proceeding, the Settling Parties shall discuss the dispute and make best efforts to devise a mutually acceptable plan, including implementation dates, to resolve the dispute.  The Settling Parties may, upon mutual written agreement, extend the time to conduct the meet and confer discussions beyond 15 days.

b.      If any Settling Party fails to meet and confer within the timeframes set forth in paragraph 46(a), or the meet and confer does not resolve the dispute, after at least 10 days have passed after the meet and confer occurred or should have occurred, either Settling Party shall be entitled to initiate the Formal Dispute Resolution procedures outlined in paragraph 47 below.

48.      <u>Formal Dispute Resolution</u>.  The Settling Parties agree that any action or proceeding which is brought by any Settling Party against any other Settling Party pertaining to, arising out of or

related to the requirements of this Consent Decree shall first utilize the Informal Dispute Resolution meet and confer proceedings set forth in the preceding paragraph and, if not successful, the Settling Parties shall utilize the Formal Dispute Resolution procedures in this paragraph.  The Settling Parties agree that Formal Dispute Resolution shall be initiated by filing a Motion to Show Cause or other appropriately titled motion ("Motion") in District Court, before Judge Zimmerman, to determine whether either party is in breach of this Consent Decree and, if so, to require the breaching party to remedy any breach identified by the District Court within a reasonable time frame.  The party filing any such Motion may request expedited review of the Motion.  If Judge Zimmerman is not available to perform the role identified herein, the Settling Parties agree that the Motion shall be re-assigned pursuant to applicable rules of the District Court.  Litigation costs and fees incurred in the dispute resolution process shall be awarded in accord with the standard established by § 505 of the Clean Water Act, 33 U.S.C. § 1365.

### XIX.   STIPULATED PAYMENTS

49.     As set forth below, the BHSMD agrees to pay stipulated payments in the event a spill reduction goal(s) is not met and/or reports required by this Consent Decree are not timely submitted.

50.     Stipulated Payments for Spills in Excess of SSO and Spill Performance Reduction Goals:  BHSMD agrees to pay One Thousand Dollars ($1,000) for each category 1 SSO, defined as a spill that (1) equals or exceeds 1,000 gallons; or (2) results in a discharge to a drainage channel and/or surface water; or (3) discharges to a storm drain and is not fully captured, that exceeds the SSO and Spill Reduction Performance Goals for the relevant year as set forth above in Section VII.

51.     Stipulated Payments for Late Reports:  The BHSMD shall have a 14 day grace period after the due date for the reports covered by this Consent Decree prior to imposition of stipulated penalties for the first instance of delayed reporting.  Baykeeper is not obligated to notify the District after any submission date has been missed, however it may do so in order to allow the District to promptly address any alleged deficiency.

a.     The BHSMD shall pay $100 per day until the report(s) are filed, up to 30 days for a total amount of $3,000.

b.     For any report more than 30 days late, the BHSMD shall pay $5,000.

1    c.    For any report more than 90 days late, the BHSMD shall pay $10,000.

2    d.    The above penalties are cumulative, as applicable, to a maximum penalty of $18,000

3    per report.

4    e.    In addition to paying the stipulated payment for a late report, the BHSMD agrees to

5    send Baykeeper the report per Section XXI as soon as it is completed.

6    52.    Stipulated Payments for Failure to Meet Requirements of SSO Reduction Action Plan:

7    Baykeeper will notify the BHSMD if Baykeeper believes that the BHSMD failed to meet any

8    requirement of its SSO Reduction Action Plan.  The BHSMD will have 30 days after receipt of

9    Baykeeper's written notification to cure any such failure, or to the extent such failure cannot be cured

10   within that time frame, to begin substantial efforts to cure within the shortest possible time frame.

11   The BHSMD will notify Baykeeper in writing of actions taken to cure.  If the BHSMD does not cure

12   the alleged failure, as applicable, within 30 days after Baykeeper's notice under this paragraph, the

13   BHSMD shall accrue a $5,000 penalty on the 31st day, and $15,000 penalty on the 91st day.  The

14   BHSMD may request a meet and confer or other proceedings set forth in Section XVIII in relation to

15   any alleged failure to cure, or to begin substantial efforts to cure, the alleged failure; any alleged

16   failure to meet any requirement of its SSO Reduction Action Plan; or the accrual of these penalties.

17   53.    Baykeeper shall notify the applicability of a stipulated payment and shall include the

18   amount of the stipulated penalty, if any, which is due and payable.  The BHSMD shall contact

19   Baykeeper within 5 days of receipt of this notification if the BHSMD disagrees with Baykeeper's

20   stipulated penalty calculation and may meet and confer with Baykeeper or seek Dispute Resolution

21   pursuant to Section XVIII.  The BHSMD shall pay any stipulated payments due pursuant to this

22   Consent Decree within 30 days after receipt of Baykeeper's invoice itemizing the stipulated payment

23   liability.

24   54.    Stipulated payments shall be made payable to, and sent via overnight delivery to, The

25   Rose Foundation 6008 College Avenue, Oakland, CA 94618, Attn: Tim Little.

26   55.    Nothing in this Consent Decree shall prevent Baykeeper from waiving any stipulated

27   penalties, which might be due under this Section XIX, based on the outcome of the Informal Dispute

28   Resolution process, or based on the Defendants' good faith efforts.

## XX.    NOTICES AND SUBMISSIONS

56.    Defendants agree to provide Plaintiff with all documents or reports required by this Consent Decree.  All documents shall be directed to the following individuals at the addresses specified below unless specifically stated otherwise herein.  Any change in the individuals or addresses designated by any party must be made in writing to all Settling Parties.

If to Baykeeper:

Layne Friedrich
Drevet Hunt
LAWYERS FOR CLEAN WATER, INC.
1004 O'Reilly Avenue
San Francisco, California 94129
Telephone: (415) 440-6520
Email: layne@lawyersforcleanwater.com
        drev@lawyersforcleanwater.com

Amy Chastain
SAN FRANCISCO BAYKEEPER
785 Market Street, Suite 850
San Francisco, CA 94103
Telephone: (415) 856-0444 x 106
Email: amy@baykeeper.org

If to the County:

James Porter and Ann Stillman
San Mateo County Department of Public Works
555 County Center, 5th Floor
Redwood City, CA 94063

With copy to

Office of the County Counsel
Hall of Justice and Records
400 County Center, 6th Floor
Redwood City, CA 94063

If to the District:

James Porter and Ann Stillman
San Mateo County Department of Public Works
555 County Center, 5th Floor
Redwood City, CA 94063

With copy to

Office of the County Counsel
Hall of Justice and Records
400 County Center, 6th Floor
Redwood City, CA 94063

57.     Defendants also agree to make available to Baykeeper any documents reasonably necessary to evaluate system performance and/or compliance with this Consent Decree within 30 days of written request by Baykeeper.

58.     During the life of this Consent Decree, Defendants shall preserve at least one legible copy of all records and documents, including computer-stored information, which relate to performance of its obligations under this Consent Decree.

59.     Any notice, report, certification, data presentation or other document submitted by Defendants to Baykeeper pursuant to this Consent Decree, which discusses, describes, demonstrates, or supports any finding or makes any representation concerning compliance or non-compliance with any requirement(s) of this Consent Decree, shall contain the following certification, signed and dated by a responsible official:

> I certify, under penalty of perjury, that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted and is, to the best of my knowledge and belief, true, accurate and complete.

## XXI.   MUTUAL RELEASE OF LIABILITY

60.     Upon District Court approval and entry of this Consent Decree, Baykeeper and its successors, assigns, directors, officers, agents, attorneys, representatives, and employees, releases all persons, including the County and the BHSMD and their respective officers, directors, employees, shareholders, agents, attorneys, representatives, contractors, predecessors, successors and assigns, past and present, from, and waives all claims, for injunctive relief, damages, penalties, fines, sanctions, mitigation, fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed in this action, or which was alleged in the Notice Letters, including but not limited to the alleged failure of the County or the BHSMD to comply with the Clean Water Act (33 U.S.C. § 1251, et seq.) and the Porter-Cologne Water Quality Control Act (Water Code, § 13000,

et seq.) (hereinafter "Claims"), up to the Termination Date of this Consent Decree.  This release includes a release, and covenant not to sue, for any claims of injunctive relief, damage, penalties, fines, sanctions, mitigation, fees (including fees of attorneys, experts and others), costs, expenses or any other sum incurred or claimed or which could have been claimed with respect to any activities in alleged violation of, or claims arising under, the Clean Water Act or the Porter-Cologne Water Quality Control Act, that may arise during the term of this Consent Decree up to the Termination Date.

61.     Nothing in this Consent Decree limits or otherwise affects Baykeeper's right to address or take any position that it deems necessary or appropriate in any formal or informal proceeding before the Regional Board, EPA, or any other judicial or administrative body on any other matter relating to Defendants.

## XXII.  GENERAL PROVISIONS

62.     Continuing Jurisdiction.  The Parties stipulate that the District Court shall retain jurisdiction to enforce the terms and conditions of this Consent Decree and to resolve disputes arising hereunder as may be necessary or appropriate for the construction or execution of this Consent Decree up to and including the Termination Date.

63.     Construction.  The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the MS4 Permit, the SSO General WDR, the Clean Water Act, or as specified herein.

64.     Choice Of Law.  The laws of the United States shall govern this Consent Decree.

65.     Severability.  In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a Court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

66.     Counterparts.  This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

67.     Modification Of The Consent Decree.  This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed

1   by the Settling Parties.

2       68.   Full Settlement.  This Consent Decree constitutes a full and final settlement of this

3   matter.

4       69.   Integration Clause.  This is an integrated Consent Decree.  This Consent Decree is

5   intended to be a full and complete statement of the terms of the agreement between the Settling

6   Parties and expressly supersedes any and all prior oral or written agreements covenants,

7   representations, and warranties (express or implied) concerning the subject matter of this Consent

8   Decree.

9       70.   Authority.  The undersigned representatives for Baykeeper and Burlingame each

10  certify that he/she is fully authorized by the Settling Party whom he/she represents to enter into the

11  terms and conditions of this Consent Decree.

12      The Settling Parties hereby enter into this Consent Decree.

13                                          COUNTY OF SAN MATEO

14
    Date: _____     _____
15                                          By: Michael P. Murphy, County Counsel

16                                          BURLINGAME HILLS SEWER
17                                          MAINTENANCE DISTRICT

18  Date: _____     _____
19                                          By: Michael P. Murphy, County Counsel

20                                          SAN FRANCISCO BAYKEEPER

21  Date: _____     _____

22  //                                     By: Sejal Choksi

23  //

24  //

25  //

26  //

27  //

28  //

APPROVED AS TO FORM:

For DEFENDANTS COUNTY OF SAN MATEO AND BURLINGAME HILLS SEWER MAINTENANCE DISTRICT:

Deputy County Counsel

Date: _____

_____

By: John Nibbelin

For PLAINTIFF SAN FRANCISCO BAYKEEPER:

LAWYERS FOR CLEAN WATER INC.

Date: _____

_____

By: Layne Friedrich

# [~~PROPOSED~~] ORDER

IT IS HEREBY ORDERED that the above captioned action against all parties is dismissed with prejudice.

IT IS FURTHER ORDERED that the Court shall retain jurisdiction over Case No. CV-08-03951-BZ for the sole purpose of enforcing compliance by the Settling Parties with the terms of the Consent Decree.

IT IS SO ORDERED.

Date: ___June 25, 2009___

NORTHERN DISTRICT OF CALIFORNIA

_____
Honorable Bernard Zimmerman
United States District Court
Northern District of California